DYSART, J.,
concurs in part, dissents in part.
hi concur in that portion of the majority opinion which affirms the awards of damages for increased risk of cancer.
I also concur in the awards for medical monitoring but on a different basis than that expressed in the majority opinion. In reviewing a factfinder’s conclusions with regard to special damages, an appellate court must satisfy a two-prong test based on the record as a whole: There must be no reasonable factual basis for the trial court’s conclusions, and the finding must be clearly wrong. Lester v. Exxon Mobil Corp., 10-743, p. 13 (La.App. 5 Cir. 5/31/12), 102 So.3d 148, 159, writ denied, 12-2202 (La.4/19/13), 111 So.3d 1028.
The majority opinion found no error in the trial court’s conclusion that the five plaintiffs to whom awards for medical monitoring were made established that they “suffered manifest physical injuries that were causally related to [their] exposure [to] ionizing radiation.” I disagree with the majority opinion that, in this case, the presence of manifest physical injuries is necessary for an award of medical monitoring damages to be made.
In 1999, La. C.C. art. 2315 B was amended to provide that “[djamages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly ^related to a manifest physical or mental injury or disease.” Prior to this amendment, however, there was no requirement that a showing of manifest physical or mental injury be made for a medical monitoring award. See Bourgeois v. A.P. Green Indus., Inc., 00-1528, pp. 11-12 (La.4/3/01), 783 So.2d 1251, 1260 (Bourgeois II) (“Because a cause of action for medical monitoring of asymptomatic plaintiffs existed prior to the effective date of Act 989, plaintiffs have a vested right to assert their causes of action for medical monitoring if those rights accrued prior to July 9,1999”); see also Cole v. Celotex, 599 *786 So.2d at 1068 (applying the codal articles on contributory negligence and virile share principles rather than the subsequent ones on comparative fault based on date of substantial exposure which occurred before codal amendments).
In determining when a cause of action accrues in a long-latency occupational disease case, including a disease resulting from exposure to NORM, we apply the significant exposure test. See Cole v. Celotex, 599 So.2d 1058, 1066 (La.1992); Austin v. Abney Mills, Inc., 01-1598, pp. 25-26 (La.9/4/02), 824 So.2d 1137, 1154, and Bulot v. Intracoastal Tubular Services, Inc., 04-1376, p. 5 (La.App. 4 Cir. 11/3/04), 888 So.2d 1017, 1021. After reviewing the record of this matter, it is clear that the plaintiffs’ exposure occurred before 1993, and well before the 1999 amendment. Accordingly, the requirement of manifest physical or mental injury or disease does not apply to these plaintiffs’ cause of action.
I respectfully dissent, however, from the opinion affirming awards for fear of cancer and punitive damages for the following reasons.

Fear of Cancer:

I do not find that plaintiffs carried their burden of proving the especial likelihood of genuine and serious mental distress arising from special circumstances, the standard set forth in Bonnette v. Conoco, Inc., 01-2767, pp. 22-23 (La.1/28/03), 837 So.2d 1219, 1234. I note that the ITCO yard closed in 1992. |sThe trial court observed that the plaintiffs first learned about exposure to NORM in 2001, but did not fully appreciate their risk until they were examined by a physician at the behest of their attorneys in 2011.
The cases cited by the trial court in its reasons for judgment all involve plaintiffs who were immediately aware of some type of toxic exposure, e.g., In re New Orleans Train Car Leakage Fire Litigation, 00-0479 (La.App. 4 Cir. 06/27/01), 795 So.2d 364 (neighbors had to be evacuated following explosion; reports of respiratory distress and eye irritations); David v. Our Lady of the Lake Hosp., Inc., 02-1945 (La.App. 1 Cir. 06/27/03), 857 So.2d 529 (plaintiff developed hepatitis C and cirrhosis of the liver after contaminated blood transfusion); Lemaire v. CIBA-GEIGY Corp., 99-1809 (La.App. 1 Cir. 06/22/01), 793 So.2d 336 (environmental clean-up worker awarded fear of cancer damages after developing severe kidney problems). To the contrary, plaintiffs herein were not aware of the possibility of developing cancer until 2001, nine years after the ITCO yard was closed.
The plaintiffs in In Re New Orleans Train Car testified that they began sleeping in their clothes or leaving packed bags by the door in case of another explosion. Likewise, the plaintiffs in Doerr v. Mobil Oil Corp., 04-1789 (La.App. 4 Cir. 06/14/06), 935 So.2d 231, testified that they began using bottled or filtered water and closely monitoring the color and odor of the tap water for signs of contamination. Here, there is no evidence that these plaintiffs gave any thought or sought any treatment or monitoring because of their alleged fear until they were examined by a doctor in 2011, nineteen years after the ITCO yard closed. Notably, too, Dr. Daniels testified that blood in the stool is not dispositive of colon cancer, but that especially in light of the plaintiffs’ exposure to ionizing radiation, coupled with the positive occult blood tests, she recommended further testing, specifically colonoscopies. There is no evidence in this record that any of these plaintiffs | ^sought this testing or any other particularized testing which would have positively determined if cancer was present, despite the “fear of cancer” they claimed.
The majority cites Doerr, supra, for the proposition that a tortfeasor should not be *787 relieved of responsibility merely because the harm inflicted is de minimus. I And that the discussion in Doerr is dicta and not controlling. Rather, as stated earlier, the standard enunciated in Bonnette, supra, is clear — the correct test is not the reasonableness of the plaintiffs fear, but the “particular likelihood of genuine and serious mental distress arising from the circumstances.” Id. pp. 24-25, 837 So.2d at 1235. I do not find that these plaintiffs have carried their burden of proof, and would reverse the award for fear of cancer.

Punitive Damages:

Former La. Civ.Code art. 2315.3, effective September 3, 1984 and repealed April 16, 1996, provided for punitive damages “if it [were] proved that plaintiffs injuries were caused by the defendant’s wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances.”
As with the medical monitoring claim, I do not find that the plaintiffs have proven an actual injury as required by La. Civ. Code art. 2315.3. The Supreme Court has held that the injuries referred to in Art. 2315.3 must be “actual injuries.” Billiot v. B.P. Oil Co., 93-1119, 645 So.2d 604, 616 (La.09/29/94). The Fifth Circuit recently confirmed that even a claim of fear of cancer or increased risk of cancer is not the type of actual injury contemplated by former La. Civ.Code art. 2315.3. See Lester v. Exxon Mobil, supra, pp. 13, 102 So.3d at 159.

Conclusion:

Accordingly, I concur in the award of damages for increased risk of cancer and medical monitoring, but would reverse the trial court’s award of damages for fear of cancer and punitive damages.